UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

|  |  |
|---|---|
| JELD-WEN INC., and JWI, INC., | CASE NO. C08-1338 RSM |
| Plaintiffs, | |
| v. | ORDER GRANTING IN PART DEFENDANTS' MOTION |
| MERRILL LYNCH INTERNATIONAL INC., and MERRILL LYNCH, PIERCE, FENNER & SMITH, INC. | |
| Defendants. | |

## I. INTRODUCTION

This matter comes before the Court on "Defendants' Motion to Compel Arbitration and Stay the Claims of Plaintiffs, and to Dismiss Plaintiff JELD-WEN Inc.'s Claims." (Dkt. #14). Defendants argue that the instant matter should be stayed pursuant to a binding arbitration clause within a contract entered into by the parties. Defendants also argue that JELD-WEN Inc.'s claims should be dismissed pursuant to FRCP 12(b)(1) because JELD-WEN Inc. was not a party to the underlying agreement and therefore has no standing in this case. Plaintiffs respond that the arbitration clause is unenforceable, and that Defendants rely on false assumptions in arguing for JELD-WEN Inc.'s dismissal.

For the reasons set forth below, the Court GRANTS IN PART Defendants' motion.

## II. DISCUSSION

**A. Background**

The instant lawsuit arises from a contract entered into between Plaintiff JWI, Inc. ("JWI") and Defendant Merrill Lynch International Inc. ("Merrill Lynch"). (*See* Dkt. #15,

MEMORANDUM ORDER
PAGE - 1

Decl. of Weiss, Ex. 2).[1] JWI owned a large concentration of Cendant stock, and desired to enter into a variable post-paid forward sale contract with an investment bank. Notably, a variable post-paid forward sale contract in the context of a stock sale is a type of contract wherein the seller hedges against any potential future downward movements in the price of a stock by selling the stock at fixed floor and ceiling prices. The buyer's incentive is that there is no fixed upside or downside to the value of the stock.

JWI received several bids for the sale of its Cendant stock, and eventually entered into a contract with Merrill Lynch in January of 2006. The agreement, in very general terms, provided that JWI would transfer 1,000,000 shares of Cendant stock to Merrill Lynch in exchange for a promise from Merrill Lynch that at the contract's maturity date, Merrill Lynch would pay no less than $12.75 and no more than $24.65 per share. The agreement also provided that Merrill Lynch would provide JWI with an 11 cent per share quarterly dividend payment. However, JWI alleges that Merrill Lynch violated the terms of the contract by selling, assigning, or delegating its obligations to a third party, and also by adjusting the floor and ceiling prices of the stock. JWI also alleges that Merrill Lynch reset the ordinary dividend amount to a 6 cent per share quarterly dividend payment. As a result, JWI and JELD-WEN Inc. ("JELD-WEN"), JWI's parent company, brought the instant lawsuit against Merrill Lynch. In its complaint, Plaintiffs assert eight causes of action, including: (1) breach of contract, (2) negligent misrepresentation, (3) fraud in the execution, (4) breach of implied covenant of good faith and fair dealing, (5) breach of fiduciary duty, (6) action for accounting, (7) injunctive relief, and (8) unjust enrichment.

Before responding to Plaintiffs' complaint, Merrill Lynch brought the instant motion, claiming that the contract contains a binding arbitration clause compelling the parties to adjudicate all claims arising out of the contract. Merrill Lynch also seeks dismissal of JELD-WEN on the grounds that JELD-WEN was not a party to the original contract, and therefore

---

[1] Plaintiffs' complaint also names Merrill Lynch, Pierce, Fenner & Smith Inc. as a Defendant. For purposes of this motion, the Court refers to both Defendants collectively as "Merrill Lynch."

MEMORANDUM ORDER
PAGE - 2

has no standing to bring any claims in this lawsuit. The Court now turns to the substance of the parties' arguments.

**B. Motion to Strike**

As an initial matter, the Court addresses Plaintiffs' motion to strike contained in their response. Plaintiffs seek to strike the Declaration of Alyson Weiss ("Ms. Weiss") on the grounds that it lacks foundation and is pure speculation. Plaintiffs claim that Ms. Weiss, an attorney for Merrill Lynch, has no personal knowledge of the events alleged in this action. However, Plaintiffs' arguments are nothing but conclusory and blanket assertions that fail to provide the Court with any substantive justification for striking Ms. Weiss' declaration. Plaintiffs merely cite a few evidentiary rules and three cases in support of their argument without analyzing how either the rules or the cases apply to the instant case.

In any event, and as Merrill Lynch indicates in its reply, Ms. Weiss's declaration simply attaches Plaintiffs' complaint, and the relevant documents in this case, including the contract and accompanying documents which contained the binding arbitration clause. The majority of these documents are actually submitted by Plaintiffs themselves in response to Merrill Lynch's motion. The Court finds no merit in Plaintiffs' motion to strike, and therefore it will be DENIED.

**C. Defendants' Motion to Compel Arbitration**

The Federal Arbitration Act ("FAA") provides for stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration. *See* 9 U.S.C. § 3. The "preeminent concern of Congress in passing the [FAA] was to enforce private agreements into which parties had entered . . . [and to] rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985); *see also Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479 (1989) (finding that the primary purpose of the FAA is to ensure that "private agreements to arbitrate are enforced according to their terms"). The Supreme Court has established that the FAA manifests a liberal federal policy favoring arbitration agreements. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991).

Whether a proceeding is subject to arbitration is determined by examining the language of the agreement. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995). Courts should refer a dispute to arbitration if (1) there is a valid agreement to arbitrate, and (2) the agreement encompasses the dispute. *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The party opposing arbitration bears the burden of showing that an agreement to arbitrate is not enforceable. *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 92 (2000).

Here, the language of the agreement between the parties clearly indicates that there was a binding arbitration clause entered into by the parties. The contract, or "Master Agreement" of the parties provides in pertinent part:

> MERRILL LYNCH INTERNATIONAL and JWI, INC. (the "Counterparty") have entered and/or anticipate entering into one or more transactions (each a "Transaction") that are or will be governed by this Master Agreement, *which includes the schedule* (the "Schedule"), and the documents and other confirming evidence (each a "Confirmation") exchanged between the parties confirming those Transactions.

(Decl. of Weiss, Ex. 2 at 23) (emphasis added).

Furthermore, the "Schedule" contained the binding arbitration clause that Merrill Lynch indicates is controlling in this case. It specifically provides:

> **Arbitration.** Each party agrees that all controversies which may arise under this Agreement, including but not limited to those involving any Transaction or the construction, performance, or breach of this Agreement *shall be determined by arbitration . . .* [The Parties] understand and agree that: (A) *arbitration is final and binding on the parties; (B) each party is waiving its right to seek remedies in court, including the right to Jury Trial*[.]

(*Id.* at 42) (emphasis added).

Therefore at first impression, it seems clear that Plaintiffs' allegations that Merrill Lynch violated the terms of the variable post-paid forward sale contract as laid out in the "Master Agreement" fit squarely within the binding arbitration clause.

Nevertheless, Plaintiffs claim that the arbitration clause is unenforceable, citing six separate reasons in support thereof. The Court finds that these reasons can essentially be

MEMORANDUM ORDER
PAGE - 4

reduced to three primary arguments. First, Plaintiffs claim that the arbitration clause does not comply with a relevant Securities and Exchange Commission ("SEC") release, consistent with the FAA, that mandates strict disclosure requirements for certain arbitration clauses. Second, Plaintiffs argue that its allegations contained in its complaint relate exclusively to the breach of the "Master Agreement" and that its claims are unrelated to the "Schedule" portion of the contract. Third, Plaintiffs claim a specific clause in the "Master Agreement" is inconsistent with the arbitration clause, thereby creating an ambiguity that should be construed against Merrill Lynch, ultimately making the arbitration clause unenforceable. However, all of these arguments fail for the reasons set forth below.

With respect to the SEC release, the Court finds that it has no applicability to the instant case. The SEC release cited by Plaintiffs was adopted to "improve disclosure to customers in account opening agreements, and to restrict the content of the arbitration clauses." 1989 WL 991624, *21 (SEC Release No. 34-26805); *Museke v. Piper, Jaffray & Hopwood, Inc.*, 260 Mont. 207, 214 (1993). Here, it is undisputed that the contract entered into by the parties was a variable post-paid forward sale contract, which as described above, does not resemble a scenario in which a customer opens an account. Instead, as Plaintiffs readily acknowledge in their complaint, this type of complex contract scheme is designed to protect the seller of stock by "hedg[ing] against future downward movements in the price of . . . stock." (Pls.' Compl., ¶ 10). In addition, the SEC release applies to Self Regulatory Organizations ("SRO's"). 1989 WL 991624, *1, n. 4. The applicable contract in the instant case is governed by the International Swaps and Derivatives Association, Inc. ("ISDA") as indicated by the conspicuously large and bold-faced type on the first page of the parties' "Master Agreement." (Decl. of Weiss, Ex. 2 at 23). The ISDA is not regulated by the SEC, but instead by its own Board of Directors. (Dkt. #19, Decl. of Darras, ¶ 4). Indeed, Plaintiffs do not establish that either party in this case is an SRO that is covered by the SEC release. Therefore the requirements that SEC release 34-26805 imposes on arbitration clauses are irrelevant in the instant case.

Next, Plaintiffs' argument that its claims relate solely to the "Master Agreement" and not the "Schedule" wholly ignores the plain-language of the contract itself. It is well settled "that an agreement to arbitration is a matter of contract." *Chiron*, 207 F.3d at 1130. As with any contract, a court looks first to the express terms of the contract to determine the parties' intent to arbitrate. *See id.* As mentioned above, the opening sentence of the "Master Agreement" very clearly provides that the parties "have entered and/or anticipate entering into one or more transactions . . . that are or will be governed by this Master Agreement, *which includes the schedule*." (Decl. of Weiss, Ex. 2 at 23) (emphasis added). Furthermore, Plaintiffs' allegations in this case all arise out of Merrill Lynch's unilateral decision to convey its obligations under the contract to a third party, adjust the collar prices of the contract, and reduce the amount of the guaranteed quarterly dividend that Plaintiffs were to receive. As a result, there is no question that Plaintiffs' claims are encompassed by the arbitration clause which claims that all disputes arising out of the "Master Agreement" shall be settled by binding arbitration. Plaintiffs cannot distinguish between the "Master Agreement" and the "Schedule" because the "Schedule" is expressly incorporated into the "Master Agreement."

Finally, Plaintiffs' arguments that all documents, when read together, create ambiguities that must be construed against Merrill Lynch are also off the mark. Plaintiffs specifically claim that there are certain clauses contained in the "Master Agreement" including a "Jurisdiction Clause" and several "Merger Clauses" that are inconsistent with the binding arbitration clause. However, Plaintiffs once again fail to recognize that the plain-language of the "Master Agreement" very clearly provides that ""[i]n the event of any inconsistency between the provisions of the Schedule and the other provisions of this Master Agreement, *the Schedule will prevail.*" (Decl. of Weiss, Ex. 2 at 23) (emphasis added). Significantly, this section, titled "Interpretation," is on the first page of the "Master Agreement" and follows the opening paragraph of the agreement. (*Id.*). Plaintiffs also suggest that an ambiguity exists because the "Confirmation" portion of the parties' agreement does not contain an arbitration clause. But again, the "Confirmation" clearly provides that it "supplements, forms part of,

and is subject to, the ISDA Master Agreement." (Decl. of Weiss, Ex. 3 at 60). There are no ambiguities in the language of the relevant documents in this case.

Ultimately, it is clear that the terms of this contract expressly refer this case to arbitration. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that districts courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter*, 470 U.S. at 218 (emphasis in original). The Court finds that the binding arbitration clause is enforceable, and grants Merrill Lynch's motion to compel arbitration of the instant dispute.

### D. Defendants' Motion to Dismiss JELD-WEN

Because the Court refers this matter to arbitration, the Court finds it unnecessary to make a ruling with respect to Merrill Lynch's request to dismiss JELD-WEN from the case. Accordingly, the Court will not grant Merrill Lynch's motion in its entirety.

### III. CONCLUSION

Having reviewed the relevant pleadings, and the remainder of the record, the Court hereby finds and ORDERS:

(1) "Defendants' Motion to Compel Arbitration and Stay the Claims of Plaintiffs, and to Dismiss Plaintiff JELD-WEN Inc.'s Claims" (Dkt. #14) is GRANTED IN PART. The instant case shall be STAYED pending arbitration. The parties are DIRECTED to submit a Joint Status Report informing the Court of the status of the arbitration no later than six (6) months from the date of this Order.

(2) The Clerk is directed to forward a copy of this Order to all counsel of record.

DATED this 22nd day of January, 2009.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE